## Wilhelm v. Lauman

*Walter R. Sohn*, for plaintiff.

*W. H. Dunbar*, for defendant.

RUPP, P. J., August 15, 1949.—Plaintiff filed a complaint in assumpsit against defendant to recover for services allegedly performed by plaintiff as general manager of an apartment house owned by defendant, containing 12 apartments.

Defendant filed preliminary objections to the complaint in the nature of a demurrer, alleging that the complaint fails to set forth that at the time plaintiff allegedly performed the services for which she is seeking to recover she was a licensed real estate broker, and therefore, under the Real Estate Brokers License Act of May 1, 1929, P. L. 1216, as variously amended and supplemented, 63 PS §431 et seq., the complaint does not set forth a cause of action.

Plaintiff contends that the act is not applicable to her, since her services constituted "an isolated transaction" and she did not hold herself out as a real estate broker; also, that she is not suing for services performed as a real estate broker, but for services performed as a "person employed by the owner" of the apartment building, which class of individuals was not brought within the purview of the Real Estate Brokers License Act until 1947 (see section 2(*a*), as last

amended by the Act of June 21, 1947, P. L. 767, 63 PS §432), or after she entered into a contractual relationship with defendant.

The complaint pleads, inter alia, that defendant verbally agreed to compensate plaintiff for her services as general manager at the rate of $150 per month and further that:

"10. By January 1, 1944, the defendant had given up the general management of her apartment house at the above stated address and had constituted the plaintiff the general manager thereof. The plaintiff, relying upon the oral promises made to her by the defendant to fully pay and compensate her for her additional work as general manager, continued as the general manager of said building from January 1, 1944, until September 1, 1948, or a period of four (4) years and eight (8) months, the defendant returning to Harrisburg and again taking over management of the building as of September 1, 1948.

"11. The general management of said building for the above described period of time included the following services, which were fully and regularly performed by the plaintiff on behalf of the defendant, to wit:

"(a) the hiring of help;

"(b) the purchasing of materials;

"(c) the collection of rents;

"(d) passing upon all complaints of tenants;

"(e) supervising workmen;

"(f) ordering repairs;

"(g) making regular contacts with the Rent Control Board;

"(h) receiving and deciding on estimates of contractors, mechanics, plumbers, plasterers, painters, etc.;

"(i) showing prospective tenants through the building;

"(j) overseeing the work of taking down and putting up awnings, screens, storm windows, cleaning vacant apartments, and performing many other incidental duties too numerous and detailed to mention."

It is therefore clear that the complaint pleads that as of January 1, 1944, defendant "constituted" plaintiff the general manager of the apartment house and that she served in that capacity for a period of four years and eight months. It is to recover for services allegedly rendered during that period of time that she is suing. Furthermore, plaintiff pleads services performed in connection with the "general management" of the building for the period in question which manifestly are typical of the duties of a general manager.

General managers of apartment houses were first included in the definition of "real estate brokers" contained in section 2(a) of the Real Estate Brokers License Act, supra, by the amending Act of July 2, 1937, P. L. 2811. As last amended by the Act of June 21, 1947, P. L. 767, section 2(a) reads, in part, as follows (63 PS §432):

". . . The term 'real estate broker' shall also include all real estate auctioneers and real estate appraisers, as well as all managers of office buildings, apartment buildings, and other buildings, and persons employed by the owners of such buildings. . . ."

Thus, the complaint itself negatives plaintiff's contentions and places her squarely within the definition of "real estate broker" contained in the act.

Section 6 of the act, as last amended by the Act of May 5, 1945, P. L. 424, provides, in part, as follows (63 PS §436):

"From and after January 1, 1930, it shall be unlawful for any person . . . to . . . act in the capacity of a real estate broker . . . within this Commonwealth, without first obtaining a license as a real estate broker . . . from the department [of Public Instruction]."

Section 16 of the act provides, in part, that (63 PS §446):

"No action or suit shall be instituted, nor recovery therein be had, in any court of this Commonwealth by any person . . . for compensation for any act done or service rendered, the doing or rendering of which is prohibited under the provisions of this act to others than licensed real estate brokers, unless such person . . . was duly licensed hereunder as real estate broker at the time of the doing of such act or the rendering of such service."

It is conceded that during the period involved plaintiff was not a licensed real estate broker, and it is neither pleaded nor contended that she came within any of the exceptions to the definition of "real estate broker" contained in section 2(c) of the act, as amended: 63 PS §432.

It follows that the complaint does not set forth a cause of action.

And now, August 15, 1949, judgment is hereby directed to be entered in favor of defendant and against plaintiff.